JUSTICE SHEEHY,
concurring and dissenting:
I concur with the result of Part II of the majority opinion which holds that a school district insured for tort claims coverage has *61 waived its alleged immunity from suit. That result is to be applauded, for it is a crawl back from the harsh holdings of this Court in Eccleston, Peterson, and the like, which insulated sub-governments of the state from responsibility for even the most egregious of their torts.
At the same time, I dissent from the majority’s reaffirmation in Part I, that Eccleston, Peterson, and their ilk continue in force if insurance is absent. The resolute insistence of the majority that § 2-9-111, MCA, must be read broadly has denied many a tort-injured person from succor in our courts. The judicial grant of legislative immunity down to the scrub persons mopping up the public halls is an elevation in status not reflected in the scrub persons’ pay. Under this holding, the king can do no wrong, and neither can his cooks in the kitchen, nor his ring-masters in the gym, cloaked as they are with legislative immunity.
From the reactions and comments of individual judges and members of the Bar, if I assess them correctly, Eccleston and Peterson, etc. are examples of judicial interpretation gone off the rails (see for example, the articles contained in the Montana Law Review, Constitutional Symposium ’89, Vol. 51, No. 2, Summer 1990). It is unfortunate that the majority do not use this case to get back on course.
The majority opinion seems to give weight to legislative “findings” made in the 1983 session (Section 1, Ch. 675, Laws of Montana (1983)) and eventually codified as § 2-9-106, MCA. However, this Court rejected those findings in Pfost v. State (1985), 219 Mont. 206, 221; 713 P.2d 495, 504. We determined that the “findings” were baseless and speculative, and constituted little more than a plea by the legislature that it not be forced to pay its just obligations. Eventually, the legislative “findings” were repealed (Section 4, Ch. 22, Sp. Laws of Montana (June 1986)). Hence, the findings deserve no weight in any discussion of immunity.
The majority are in a box because they have interpreted legislative action under § 2-9-111, MCA, too broadly. It is as absurd to hold that a gym teacher doing his ordinary work is acting legislatively as it was in Eccleston, to hold that a janitor, who failed to broom off snow from gym steps had failed to perform a legislative function for his employer. All § 2-9-111, MCA, was ever intended to apply to was true legislative action.
Although I concur with the result of Part II of the majority opinion that immunity is waived in this case, I must comment that the judicial logic in finding a waiver is scant. The majority go from one extreme *62 to the other. Having found in § 2-9-111, MCA, a tree of legislative immunity extending to all branches of sub-governments, the majority swing like Tarzan to the tree of waiver of immunity for all insured branches of sub-governments.
The tree of waiver is rooted on rocky ground. A good district judge in this case could not see it. The majority finds waiver because the legislature, at the same times as it was enacting immunity statutes around § 2-9-111, was also enacting statutes which allowed state sub-government to insure against their torts. If the majority had been correct in their broad interpretation of the extent of legislative immunity under § 2-9-111, the sub-governments would have no need of insurance. They would be fully insulated. It would have been far more logical to have held that § 2-9-111 extends immunity only to true legislative action, and in line with that, the legislature had permitted insurance on the remaining risks so sub-governments would not have to “reallocate their resources.” Obtaining insurance is very logical when the immunity of sub-governments is limited to legislative action; it is not logical if the immunity of sub-governments is total and insurance on their risks is unnecessary. This is not the first time I have pressed this point; I raised it in my dissent in Eccleston [240 Mont. at 61, 783 P.2d at 373 (Sheehy, J. dissenting)].
The majority have now brought us to a condition where insured school districts are liable for their torts (including legislative acts!) to the extent of their insurance, but uninsured school districts are not liable at all. One might surmise that each school district would now reject obtaining insurance, and save the cost while enjoying immunity. Not to worry. The officials of districts are not fools. They will obtain insurance if only to save their own skins from an unpredictable court. For all practical purposes, Eccleston, Peterson and company are dead.
Now the king can do no wrong except when he is insured. Long live the insured king! We will be in good hands with all state risks insured.
JUSTICE HUNT concurs in the foregoing dissent.